May it please the Court, Albert Chow on behalf of the petitioner, Zen Wang. Your Honors, in this case, it's an asylum case where the facts of this case are not in dispute. The petitioner was arrested by a Chinese police while he was at his home with other co-workers, and they were preparing for a worker's demonstration. Well, the facts are in dispute because they found him non-credible, so the question is what about the credibility finding? The whole point is that the facts are in dispute. Well, I guess what I'm saying is that the interpretation of the inconsistencies I think is what is in dispute here, not the actual facts of the case. I mean, we are conceding that the two inconsistencies cited by the Board were inconsistencies, but what we're saying is that under the totality of the circumstances, that these two inconsistencies should not form the basis of an adverse credibility finding. The first inconsistency cited we believe to be manifestly trivial. It was basically when did the petitioner and his parents move into the address that was stated on his household register? And he had said that he had lived there since birth, but the household register says that he moved in or that his parents moved to this home in 1983 when he was about three years old. But what about the record evidence that he moved there 17 years later? Yes, and I understand, again, that that's an inconsistency, which was not really, I guess, there were no questions really asked, follow-up questions asked about that. But, again, we believe that to be trivial in the sense that. But should there have been follow-up questions asked? Should Mr. Wang have been given the opportunity to explain whether or not that was actually an inconsistency and what's the reason for the date discrepancy and what's the significance of the date? Well, what I'm saying is I don't believe that that is significant. And I don't believe that that is trivial in considering this case where. I think the entire issue is trivial. The entire issue about when he moved into his current address is trivial, because I don't think it has anything to do with whether or not he worked for the company he says he worked for or whether he was a participant in a workers' demonstration and whether or not he was arrested. Or whether he was arrested at that house. Right. Right. Well, what's not in dispute is that when he was arrested in that house on September 5th, 2008, that he was living there, that that address is there on that particular date. When did he move in? We only know that he was there on 2008, and that's the only thing that matters in this particular case. The other inconsistency cited was basically when his father was detained for two days because of what happened to him. And, again, he, again, got the date wrong as to when his father was arrested. But we believe that this should not reflect on his credibility, because this was something that did not happen to him specifically. It happened to his father. But there is no inconsistency as to the fact that the father was arrested after Wang left China. Correct. So we know that. So it had to be sometime in 2008, 2009. Correct. And he was asked, well, when was your father arrested? And he gave a date, you know, and I believe he said November or December of 2008. But it actually was his father was actually arrested in August of 2009. And he filled out a form in August of 2009 in which he said his father had been arrested a week earlier. Correct. Which was inconsistent with his testimony at the hearing that it was in November or December of 2008. It's approximately 8 months difference. And although it wasn't his personal arrest, when he filled out the form and said something happened a week prior, that seems like something you would remember, your father being arrested a week earlier. So how does he explain those inconsistencies? And I understand your point, Your Honor. And, you know, my biggest problem with these types of cases is that sometimes we simply just say, oh, there was an inconsistency, and one inconsistency can form the basis of an adverse credibility finding. But we don't evaluate it in terms of what does this say about this person's truthfulness or lack thereof. And in considering this, again, this is something that did not happen to him. It happened to his father. And so five years later when you have a hearing and you get the date wrong. Well, he didn't. I mean, it wasn't clear he got the date wrong. I mean, they gave him a date, and he says, oh, yeah, that sounds okay. And are you sure? Yes, I am. And then later he says, well, I'm not so sure. I don't really know. Right. And then they come up with this other date. So, I mean, he was clear relatively when it was, i.e., it was after he left, not too long after he left. Correct. But he didn't know exactly when it was. Correct. And that's why we believe that this should not reflect on his truthfulness. I don't believe that this was based upon untruthfulness. It was simply just lack of clear memory about something that did not occur to him. It was a phone conversation. And it's not even a memory. I mean, i.e., he, a date is something you attach after the fact. It's not, I mean, it was a memory of when. And in this instance, it may not have been when his father called him. It might have been, the difference between when he heard it and when it happened could be different. Correct. Or does it not? And that's why we believe that under totality of the circumstances, that these two inconsistencies should not form the basis of an adverse credibility finding in this particular case. And although the I.J. found other inconsistencies, the BIA did not rely on them. Right. The BIA said, well. So what happens next? I.e., suppose we remand. Did they get to do it over again, or what happens? Well, I mean, I guess that's up to, I guess the main thing is the ruling by this Court. But if he were, for example, to be found credible, then the immigration court would then have to evaluate credibility, that because he's credible, whether or not these facts then would add up to past persecution or well-founded fear of future persecution. And aside from the credibility, the other issue in this case is whether or not the documents that were submitted can independently establish his asylum claim. And we do believe that that is so in this case. But if we reverse on the adverse credibility finding and remand to the BIA, we don't need to reach that issue. That's true, because credibility or if he is found to be credible, that testimony unto itself is enough to meet the burden of proof. However, it is still possible that the BIA or an immigration judge could say, even with the credible testimony, that we still need some corroborating evidence. So I do believe that this Court should actually rule on. But corroborating evidence doesn't corroborate the whole story. It corroborates little pieces of it, so it couldn't stand by itself, could it? Well, our position is that, for example, the work certificate certainly corroborates that he worked for the company that he says he worked for. Right, okay. And then the administrative punishment decision does corroborate that he was arrested on a certain date. Right, but it doesn't corroborate that there was a protest. It doesn't corroborate, you know, the discharges. It doesn't corroborate what would be necessary to establish persecution on a protected ground. Well, it does establish that he was detained for 15 days and that he did have to pay $6,000. But it doesn't corroborate the nexus. Well, it does say, at least on there, it does say for anti-government activities or something of that nature. So it does say that. It doesn't say for workers' demonstration or anything of that nature. That's true. But we do believe that just simply saying that it was anti-government, that that is enough to meet the burden of proof. And certainly, in combination with what we believe to be credible testimony, that that would be enough to meet the burden of proof in this case. I see that I have two minutes left, and so I will. What did the IHA, what did he do with these documents? He thought they were legitimate documents or what? And that's the other thing. See, there was nothing in terms of the indicia of reliability or unreliability in these documents. The judge simply just said, well, it only corroborates that he worked there, but it doesn't corroborate that he was fired or anything of that nature. And that's true. It doesn't corroborate he was fired, but it does corroborate that he worked there. And so there was nothing. What about the fact that it says that he was arrested for anti-government activity? An illegal gathering, which sort of corroborates that there was this workers' protest. Right. And what the board basically said was, well, it's kind of lacking in the details of what happened. But, again, it's an administrative punishment decision. I don't believe that that's, it's not like a police report or some kind. It's simply just stating what the disposition of the case was. Right. And that's what it was, is that illegal anti-government meeting. And so that's why we believe that there was nothing found about these documents that were unreliable. They simply said that these documents were not complete and could not of itself verify the case. So, counsel, in response to Judge Berzon's question about what happens next, I understood your answer to be that you believe this court should reverse the adverse credibility determination in remand to the agency for further proceedings. Is that correct? Yes. Yes. And then once that happens, then the court can evaluate, based upon credible testimony, whether or not this person actually suffered past persecution or whether there's a well-founded fear. Well, I have 30 seconds left, so thank you. All right. Thank you, counsel. Mr. Moss. Thank you, Your Honor. May it please the court, Benjamin Mark Moss for the respondent, the Attorney General. After a full and fair hearing before an immigration judge, the Board of Immigration Appeals agreed that Mr. Wang failed to present a review petition and, alternatively, failed to reasonably corroborate it. And because each of these alternative findings are supported by substantial evidence, we asked the court to deny the review petition for two reasons. First, Mr. Wang's evidence was inconsistent on important topics, including relating to when the father was allegedly arrested, which goes to the heart of the claim, even though it need not do that under the REAL ID Act. Alternatively, second. Wait a minute. When doesn't go to the heart of the claim. That he was might be important. Whether it was relatively, he said it was after he got to the United States. So, as I said before, it wasn't so clear that he, when he said November, December, it was because somebody was putting words in his mouth, essentially. But then later he said, no, no, I don't really know. He agreed with the assertion of certainly it was November or December 2008. And then he changed his mind before the contradiction was brought up, as I recall. He changed his mind, and then he was given an opportunity to explain it, and he didn't really offer an explanation beyond that he didn't really remember. Well, he did. His explanation was it happened five years ago. I wasn't sure of the date. But that, so, Your Honor's first question or first point, that there's a dispute about when it happened. I think the dispute about when it happened calls into question whether it happened at all. I think it is a substantial inconsistency. If I asked you when exactly, within a range of 10 months, something happened that happened five years ago, when it didn't happen to you, somebody told you to on the telephone, is there a pretty good chance you're not going to know the date? Certainly I wouldn't. If I had done a declaration saying it happened last week, I would remember when it happened. No, you wouldn't remember you said that. Maybe you'd be a better witness, but that would be a different point. Well, would you actually remember it? I understand, Your Honor. But here, the Board was entitled to rely on this inconsistency as substantial evidence. Even if the Court has a different view of it and understanding that reasonable minds may differ, the record has to compel an alternative conclusion, not just support it. And if I could just mention the other inconsistency. I know you're going to tell me one inconsistency is enough, which I've never understood. Because if the I.J. says there are five reasons why I think he was inconsistent so I don't believe him, and now we're down to one, we have absolutely no reason to think the I.J. would have come to the same conclusion on one inconsistency. But I know we've said this over and over again. It doesn't make a bit of sense in terms of how people actually make decisions. Well, I believe even Shrestha, this Court's precedent, acknowledges that even one inconsistency could be enough. But turning to the second inconsistency about the date of residence, that's a 17-year gap that raises questions about whether he was even living in. I have a question. Have you looked at the – I don't read Mandarin, but I did look at the Mandarin form. Okay? And the Mandarin form has the dates in Roman letters, Roman numbers. Okay? And there is no 1997 date in Roman numbers on that form. The Mandarin form, if you compare the forms for the three people who are – where there are their translations, the one that has his date of birth on it, which is the third one in the series, it has the date of birth in Roman numbers. And at the bottom, in the same place where the parents' date of moving and address is, it has the same 1983 date and the same address as his mother. So where does the 1997 date even come from? Your Honor, the record before the court is the official translation in English. I know, but I'm just curious. I wish I could comment on that. So if somebody had asked him this question in any coherent fashion, he might have pointed out that it's actually not what it says on the Mandarin form, because I think it's not. And, in fact, he had the opportunity to explain that inconsistency. Well, he didn't, because look at the question. What was the question he was asked? The question – I can pull that up, Your Honor, the question he was asked.  I pulled it up. I can tell you in a moment what it was. It was, can you explain why your sworn application indicates that you live in Number 7 your whole life? Yes, that's right. Why does the household registry say otherwise? That's the address. Nobody said the dates were different. He was answering about the dates. About the address. I'm sorry. The judge, after that quote that Your Honor just read, the judge then asks, that's the – I'm sorry. Is that your complete answer? Because nobody said – he thought they were questioning the address. What they said to him, can you explain why your sworn application indicates that you lived in Number 7 your whole life? Yes, that's right. Why does the household registry say otherwise? That's the address. Is that your complete answer? Yes, because it was the address. So how was he supposed to know what they were asking him? Because the question was, can you explain? He didn't explain.  Not can you explain the date. Explain the discrepancy, Your Honor. And his counsel had the opportunity, if he had wanted, to ask questions to develop that point if he felt that he had not adequately explained it, despite having the opportunity. He did. He said, that's the address. And it was the address. And the agency was not required to accept that particular explanation. This Court's case is to make that clear, that the agency is allowed to weigh the evidence, including the answers. Yes, if you have a coherent question. But that wasn't a coherent question. Your Honor. The agency also has to give him an opportunity to explain the inconsistencies. That's correct. And the exchange that's in the transcript, as Judge Berzon has noted, doesn't seem to give him a clear opportunity and clear questions so he understands what he would be explaining. So if the Court were to find that he wasn't given a reasonable opportunity to explain the inconsistencies and reverse the adverse credibility determination, what is it that the government thinks should happen next? In a situation, Your Honor, where the Court reverses the adverse credibility determination, the Court should still reach the independent and alternative ground of failure to corroborate. Which, under the Real ID Act, the agency is allowed to deny a claim, even if credible, for corroboration reasons. And there are a number of issues relating to corroboration that the agency found quite significant. Why don't you clarify that for me, though? Because I would think if his oral testimony is deemed credible, then there would be a lesser need to corroborate. So doesn't it change the weight or the need or amount of corroboration that would be necessary in the IJ's analysis? You're nodding your head yes. I'm nodding your head to I understand Your Honor's question. Okay. But I do not think that is the case here. It could be the case in some situations, but I think if we look at what the Board said on page 5 of the record, to establish his claim independent of his own non-credible testimony. Right, that's what I'm saying. So if his testimony is credible, then that other evidence doesn't have to establish his claim independently, but it could corroborate aspects of his claim. Do you see what I'm saying? I think I see what you're saying. That is not the way that I read the record, but if the Court reads the record as the corroboration is hinging on the credibility, then I think that the fair thing to do would be to send it back to the Board to let the Board clarify whether, in fact, the corroboration was separate or part and parcel with the credibility. I agree that it doesn't corroborate the entire story. For instance, Your Honor, the details of the arrest, that's just totally missing. Where are the eyewitness accounts? Right. But that comes from the testimony, if you believe it. That's why I kind of think the two issues are dependent on each other. I see that. I see that reading, of course, but I just think that the Board's language is clear enough to enable the Court to conclude that it's an independent and alternative finding, which, by the way, in Mr. Wang's board brief at page 13, he agrees that it's an independent finding. And that's an admission. Independent of the incredible testimony. Correct. So you can, even if the Board got it wrong on credibility, and we're not going to suggest that, but we understand the Court may be interested in going that route, there's still a corroboration issue that we believe is a live issue. The Board specifically said the immigration judge further found that the respondent's corroborating evidence is insufficient to establish his claim independent of his own non-credible testimony. And that's all it said. It didn't say that it would have been insufficient if you believed his story. The Board did not elaborate greatly. Well, it didn't only not elaborate. It said exactly what it was saying, which is it was insufficient to establish his claim independent of his own non-credible testimony. That is what it says, of course, but it, you know, the word independent really suggests that the Board was viewing these as separate issues here. I mean, actually, there was a fair amount of corroboration here, including There was, but not on two crucial issues. The claim, the details of the arrest, allegedly there were six people who were there, got arrested. But usually, I mean, as to what is ordinarily the case in these cases, if you believed his story, and nonetheless insisted on corroboration of the, I mean, you had some corroboration of the details of the story. You had corroboration that he was arrested for anti-government activity. You had corroboration by his coworker of some of the details. You had more than usual in terms of corroboration. That may be true, but in any event, he didn't corroborate all of the necessary elements of his persecution claim. He didn't show that it was harm rising to the level of persecution, which the Board tells us there at the bottom. I guess it's the second to last full paragraph on page 5, which gives an indication that the Board was just not confident that he suffered harm rising to the level of persecution based on the lack of ---- He was arrested, detained, and beaten by the police and by fellow inmates and was fired and required to report. You don't think that rises to the level of persecution here? The question is if the facts have been corroborated, Your Honor. No, no. If his testimony was deemed credible, that's the testimony. Yes, if credible. But I think ---- I guess if we're in the area where we're focusing on corroboration, I think the issue is has he corroborated whether or not those details of the arrest occurred. How does he corroborate that by independent evidence? That's an impossible burden. I don't think we hold people to that. It's not impossible. There were six people who were arrested that day as well as his parents who he said he's regularly in touch with. In fact, two weeks before the hearing, he had been in touch with his parents. There's no reason he could not reasonably have obtained a statement from his mother or his father or one of the five other people who were also arrested that day to verify the details of the claim. If you look at the co-worker's affidavit, it has no foundation. It doesn't explain how the co-worker knows any of the details relating to the arrest. The Board is allowed to say we need some kind of corroboration here to support these elements of the claim, even though, as Your Honor pointed out, there are other aspects that he did corroborate. So is your argument that if his testimony were deemed credible, his testimony alone without corroboration would not be sufficient? If he's deemed credible, yes, under this Board's decision, the Board is saying, under the Real ID Act, you needed to provide reasonably available corroboration and you did not, and so that's why the Board's denying it. Well, that isn't what, again, that isn't what the Board said. The Board didn't say even if we believe him, there wasn't sufficient corroboration. They said if we don't believe him, there wasn't sufficient corroboration. That's what it said, specifically. I think I may have misspoken or gotten twisted, but what I meant, Your Honor, and I acknowledge that I'm way out of time, but I'm trying to answer the Court's questions, but what I tried to say is... Just answer the question as clearly as you can. Very good, Your Honor. I think the Board was saying he's not credible because of these reasons, but even if he is credible, he still hasn't provided reasonably available corroboration. But that isn't what the Board said. The Board said the opposite. Respectfully disagree, Your Honor. I read it to you. I just read it to you. I mean, it's not useful to stand up here and say it said the opposite of what the sentences say. I'm not saying, Your Honor, I understand. I don't mean to say that it says words that it didn't say, but this is the Government's reading of the words that the Board did say. Really? That's interesting. We're in the study world now. All right. Thank you very much, Counsel. You're well over your time. You have 30 seconds. Do you wish to use it? Thank you, Your Honor. No, Your Honor. I wish to use it. All right. Thank you, Counsel. Wang v. Barr is submitted.
judges: Wardlaw, Berzon, Bade